UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

    Plaintiff,

v.                          Case No.

APPROXIMATELY $1,059,608 IN UNITED
STATES CURRENCY FROM WELLS FARGO
BANK ACCOUNT ENDING IN 3918,

    Defendant.

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**

The United States of America, by its attorneys, Richard G. Frohling, United States Attorney for the Eastern District of Wisconsin, and Bridget J. Schoenborn, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**Nature of the Action**

1. This is a civil action to forfeit property to the United States of America, under 18 U.S.C. §§ 981(a)(1)(C) and 984, for violations of 18 U.S.C. § 1343.

**The Defendant In Rem**

2. The defendant property, approximately $1,059,608 in United States currency from Wells Fargo bank account ending in 3918, held in the name of Julie A. Hartjes, was seized on or about December 23, 2021, in Green Bay, Wisconsin.

3. The Federal Bureau of Investigation seized the defendant property pursuant to seizure warrant 21-M-752 issued by United States Magistrate Judge James R. Sickel in the Eastern District of Wisconsin on December 22, 2021.

4. The defendant property is presently in the custody of the United States Marshal Service in Green Bay, Wisconsin.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

7. Venue is proper in this judicial district under 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred, in part, in this district.

## Basis for Forfeiture

8. The defendant property, approximately $1,059,608 in United States currency from Wells Fargo bank account ending in 3918, is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, because it consists of, or is traceable to, proceeds of "specified unlawful activity" – as defined in 18 U.S.C. § 1956(c)(7), with reference to 18 U.S.C. § 1961(1) – namely, wire fraud, committed in violation of 18 U.S.C. § 1343.

## Facts

**Background**

9. One common financial fraud scheme is known as a business email compromise ("BEC") fraud scheme. In a BEC scheme, a fraudster gains unauthorized access to, or spoofs,
2

the email address belonging to a customer or vendor of a business. The fraudster then sends an electronic communication – on the false pretense that the fraudster is the business's legitimate vendor or customer – instructing the business or one or more of its vendors, customers, or financial institutions to wire money to a bank account controlled by the fraudster.

10. In many cases, the person or persons who launder the proceeds of a BEC fraud scheme first open a bank account or accounts to receive those proceeds. Such a launderer often opens the bank account or accounts in the name of one or more fictitious businesses in order to conceal the fraudulent nature of the bank account from the bank and the victims who are duped into wiring money there.

11. Perpetrators of BEC fraud schemes sometimes also recruit witting or unwitting persons within the United States to open bank accounts that the perpetrators use to receive proceeds of the scheme.

12. Not all such third-party account holders who receive BEC fraud proceeds are ignorant, at least initially, as to the nature of the BEC fraud proceeds being deposited into their accounts. Some persons who open and use accounts to receive BEC fraud proceeds are witting money mules who understand the criminal nature of the funds they are receiving in the account from the outset. Other such account holders are put on notice of the facts that they are receiving, and helping launder, fraud proceeds during the course of receiving such fraud proceeds into their account. Thus, some persons who launder BEC fraud proceeds might begin as unwitting money mules but then progress to becoming witting money launderers.

**Opening of Wells Fargo bank account ending in 3918**

13. Wells Fargo bank account ending in 3918 ("WF 3918") is a checking account that was opened on or about April 19, 2021, in Edgar, Wisconsin.

14. The sole account holder of WF 3918 is Julie Hartjes, 8XX Fourth Avenue, Antigo, Wisconsin, which is in the Eastern District of Wisconsin.

**November 1, 2021, wire transfer totaling approximately $2,775,440.19 in fraud proceeds into WF 3918**

15. A business having the initials H.S.L. is a financial brokerage firm based in Hong Kong.

16. One of H.S.L.'s clients is a business having the initials A.G.H., which is incorporated in the state of California. H.S.L. held funds on behalf of A.G.H.

17. The managing member of A.G.H. is an individual having the initials T.P.

**October 28, 2021 email exchanges**

18. On or about October 28, 2021, an individual having the initials J.N. of H.S.L. received an email – from txxxxx@AxxxxxxGH.com, which is the true email address for T.P. – with instructions to withdraw all funds held in H.S.L.'s brokerage account for A.G.H.

19. The October 28 email, purportedly from T.P., requested that the A.G.H. funds be wire transferred to Bank of America account ending in 6764 held in the name of A.C.

20. J.N. responded by email to the individual that J.N. believed to be T.P. asking whether the funds could be remitted in United States dollars rather than Hong Kong dollars.

21. The individual purporting to be T.P. responded by email to J.N. stating that because T.P. was not receiving a favorable conversion (from Hong Kong dollars to United States dollars) from Bank of America, the funds should instead be transferred to JP Morgan Chase bank account ending in 2333 held in the name of A.C. The email further requested that the wire be sent as soon as possible.

22. J.N. responded by email to the individual that J.N. believed to be T.P. stating that the JP Morgan Chase account holder, A.C., did not match H.S.L.'s client's name, A.G.H., and that if the account name had changed, J.N. would need the related documents.

**October 29, 2021 email exchanges**

23. On October 29, 2021, the individual purporting to be T.P. responded by email to J.N. stating that "nothing changed, it remains the same as: [A.G.H.]" and asking whether the wire transfer had been sent.

24. J.N. responded by email to the individual that J.N. believed to be T.P. stating that for compliance purposes, the funds could only be sent to a bank account with the same name as the securities account, which was A.G.H., and asked for confirmation on the account name for JP Morgan Chase bank account ending in 2333.

25. The individual purporting to be T.P. responded by email to J.N. confirming that the A.G.H. was the account name for JP Morgan Chase bank account ending in 2333.

**October 30, 2021 email exchanges**

26. On October 30, 2021, the individual purporting to be T.P. sent an email to J.N. stating that the JP Morgan Chase bank account ending in 2333 was actually in the name of A.C., not A.G.H., and requesting that the funds instead be wire transferred to WF 3918. The email further stated that WF 3918 was held in the name of A.G.H., provided the Wells Fargo wire instructions, and requested that the wire transfer be processed as soon as possible.

27. J.N. responded by email to the individual that J.N. believed to be T.P. confirming that the funds would be wired accordingly.

28. On November 1, 2021, under the direction of the individual believed to be T.P. at A.G.H., H.S.L. caused to be wire transferred approximately $2,775,440.19 in United States

currency – which funds H.S.L. was holding on behalf of A.G.H. – from H.S.L.'s account at the Bank of China to WF 3918.

29. On or about November 12, 2021, H.S.L. learned that T.P.'s email address had been compromised by an unknown fraudster and that the emails from October 28-30, 2021, to J.N. were in fact communications with a fraudster and not with T.P.

30. On or about November 13, 2021, T.P. informed H.S.L. that A.G.H. did not use Wells Fargo for banking. H.S.L. then contacted the Bank of China and requested a recall of the November 1, 2021 wire transfer.

31. On or about November 16, 2021, the Bank of China initiated a recall for the November 1, 2021 wire transfer to WF 3918.

32. At the time of the recall, there were insufficient funds in WF 3918 to recall the entire approximately $2,775,440.19 wire transfer from November 1, 2021, because Julie Hartjes had already issued checks totaling over $1.7 million from WF 3918.

33. H.S.L. and A.G.H. were the victims of this business email compromise fraud scheme.

34. The approximately $2,775,440.19 that H.S.L. wire transferred to WF 3918 on November 1, 2021, constituted proceeds of that fraud scheme.

35. The defendant property consists of, or is traceable to, H.S.L.'s November 1, 2021 wire transfer of approximately $2,775,440.19 to WF 3918.

**Warrant for Arrest In Rem**

36. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## Claim for Relief

37.     The plaintiff repeats and incorporates by reference the paragraphs above.

38.     By the foregoing and other acts, the defendant property, approximately $1,059,608 in United States currency from Wells Fargo bank account ending in 3918, consists of, or is traceable to, proceeds of specified unlawful activity, namely, wire fraud, committed in violation of 18 U.S.C. § 1343.

39.     The defendant approximately $1,059,608 in United States currency from Wells Fargo bank account ending in 3918 is therefore subject to forfeiture to the United States of America under 18 U.S.C. §§ 981(a)(1)(C) and 984, with cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 20th day of May, 2022.

Respectfully submitted,

RICHARD G. FROHLING
United States Attorney

By:     *s/BRIDGET J. SCHOENBORN*
BRIDGET J. SCHOENBORN
Assistant United States Attorney
Wisconsin Bar Number: 105396
Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin

517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: bridget.schoenborn@usdoj.gov

# Verification

I, Jennifer L. Peterson, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation ("FBI"), that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 9 through 35 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the FBI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 05/19/2022

*s/Jennifer L. Peterson*
Jennifer L. Peterson
Special Agent
Federal Bureau of Investigation